FILED

2014 Nov-19  PM 12:26
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE U.S. DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **NANCY WINBUSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | |
| | ) | _____ |
| | ) | |
| **ATLANTIC CREDIT AND** | ) | **JURY TRIAL DEMANDED** |
| **FINANCE SPECIAL FINANCE** | ) | |
| **UNIT, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Nancy Winbush ("Winbush") and files this complaint against Atlantic Credit and Finance Special Finance Unit, LLC ("Atlantic") for violation of the Fair Debt Collection Practices Act and for violation of state law. In support thereof, Winbush alleges as follows:

## NATURE OF THE CLAIM

Defendant Atlantic is a debt buyer, purchasing information about allegedly "charged-off accounts" from various financial institutions for pennies (or less) and then filing mass lawsuits based on that information. Atlantic performs no due diligence to determine whether the underlying debts are valid before filing suit and has no intent to prove its cases at trial. Instead, Atlantic files these suits with the

intent of extracting settlements out of the consumers regardless of whether the debt is valid or not.

Pursuant to this strategy, Atlantic filed suit against Winbush on July 23, 2014, alleging that she owed $6,459.44.  Winbush did not owe the debt, which had had been paid off years earlier through credit disability insurance that Winbush obtained when she first took out the loan in question.  Atlantic filed suit against Winbush despite being informed of this fact.  On November 3, 2014, trial was had on Atlantic's suit.  When Winbush appeared for the trial, Atlantic's counsel asked if she would settle its claim.  After Winbush refused, Atlantic's counsel admitted to the Court that she had no evidence to offer that Winbush even owed a debt and judgment was entered against Atlantic.

Atlantic's frivolous collection suit against Winbush, without evidence of the debt, with knowledge that it will make no effort to procure that evidence, and with knowledge that the debts are likely invalid, violates the Fair Debt Collection Practices Act and state law.

### THE PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Winbush is a natural person residing in Jefferson County, Alabama.

2.      Defendant Atlantic Credit and Finance ("Atlantic") is a Virginia limited liability company with its principal place of business at 3353 Orange Avenue, Roanoke, Virginia 24012.

3.      This Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 because it arises under a federal statute, 15 U.S.C. §1692k.  The Court has supplemental jurisdiction over Winbush's state law claims pursuant to 28 U.S.C. §1367(a).

4.      This Court has personal jurisdiction over Defendant Atlantic because (1) the events that are the basis of this lawsuit occurred in Alabama and because (2) Atlantic regularly conducts business in the state of Alabama.

5.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

6.      Winbush is a "consumer" within the meaning of that term under 15 U.S.C. §1692a(3).

7.      Atlantic is a "debt collector" within the meaning of that term under 15 U.S.C. §1692a(6).  Atlantic is engaged in the business of collecting debts incurred, or alleged to be incurred, for personal, family or household purposes.

8.      Atlantic employs of strategy of paying credit card companies and/or other providers of consumer credit (the "sellers") in order to receive a purported "assignment" of what the sellers claim to be their charged off consumer debts ("debts").

9.      On information and belief, Atlantic does not actually purchase and receive account information which would support the "debts" that it claims to purchase, such as a signed contract.  Instead, Atlantic typically receives little more than a spreadsheet listing the names, addresses, and amounts that the seller of information claims it is owed, and possibly copies of a few months of credit card statements allegedly sent to the defendant.

10.     Atlantic typically pays pennies on the dollar, or even a fraction of that amount, to receive this information.

11.     Neither Atlantic nor the seller perform due diligence on the "debts" that Atlantic purports to buy to determine whether the seller actually owns the debts in question, whether the debts are still owed, and/or whether debts are valid.

12.     Atlantic knows there is a high probability that many of the "debts" that it purchased are not valid and/or are unenforceable.  Atlantic is aware that it lacks sufficient information and documentation to determine the validity and enforceability of the "debts" that it purports to purchase.

13.     On information and belief, Atlantic consciously and deliberately avoids performing due diligence on the "debts" that it purports to be buying to confirm their validity.   Atlantic avoids performing due diligence because such efforts would cost time and money, Atlantic knows that if it performed due diligence on those "debts" then it would affirmatively learn that a large percentage of the "debts" that it purchased are invalid or unenforceable, and it knows that, if it simply files suit on those alleged "debts" without confirming the validity of the claim, then many of the defendant consumers, who are typically poor or economically disadvantaged, will be too scared to fight Atlantic's attorneys and will simply agree to pay Atlantic's illegitimate claims.

14.     Upon receiving assignment of these "debts," Atlantic initiates collection efforts, including sending letters threatening legal action.

15.     If the consumer fails to accede to Atlantic's demands, it will file a collection suit on the alleged "debts."

16.     When Atlantic files suit, it knows that it lacks sufficient information and evidence to prove its claims in an Alabama court, that it will not be able to procure such evidence, and it has no intent to do so.

17.     Instead, Atlantic calculates that many of the consumers will simply pay Atlantic off in order to settle the lawsuit, regardless of whether the underlying debt is valid and/or owed.

18.     When a consumer who has been sued by Atlantic obtains legal representation, Atlantic typically agrees to either dismiss the case against that consumer outright or stipulate to a judgment in favor of the consumer.  That is because Atlantic's attorneys have not conducted a meaningful review of the facts underlying the suit before filing and Atlantic knows it cannot prove its claim against the consumer in an Alabama court.

19.     Pursuant to this strategy, Atlantic began sending multiple letters to Winbush in or around the spring of 2014, falsely representing that she owed it a debt based on a loan she had taken out many years earlier and threatening to file suit and obtain a judgment against her if she did not pay the money it demanded. Atlantic's representatives also began calling Winbush, demanding payment.

20.     Winbush did not pay Atlantic because she had obtained credit disability insurance through Household Life Insurance Company ("Household") when she incurred the debt claimed by Atlantic.  Subsequently, Winbush went on disability, and the account in question was paid off by Household pursuant to the policy.

21.     Upon being contacted by Atlantic, Winbush repeatedly informed it of this fact.  Atlantic ignored this information, told her that she was still "responsible" for the purported debt under the law, continued to contact her demanding payment of the purported debt, and threatened to file a lawsuit against her if she did not pay.

22.     On or about May 8, 2014, Atlantic filed suit against Winbush in the District Court of Jefferson County, Alabama.  Atlantic's suit falsely alleged that Winbush owed it $6,459.44, plus interests and costs.

23.     Atlantic's counsel then contacted Winbush to ask if she would settle. She refused its demand and attempted to make arrangements with Atlantic's representatives to be at her home to accept service of the lawsuit.  Atlantic's representatives, however, repeatedly failed to show up at Winbush's residence at the arranged times so that she could be served with the lawsuit.  Winbush spent approximately five days at her house waiting for Atlantic's process server to show up at the various scheduled times.  The process server failed to appear each of those times.

24.     Instead, Atlantic's representatives showed up at her residence at other, unscheduled times, looking for Ms. Winbush.  On at least one occasion, Atlantic's representative trespassed into the Winbush's garage to question her husband as to her whereabouts.  Ms. Winbush was not at home at the time.  Winbush suffered fear and anxiety as a result of these unannounced intrusions onto her property.

25.     Subsequently, Winbush was forced to incur the cost of hiring an attorney to defend her against Atlantic's bogus claims.

26.     On November 3, 2014, Winbush and her counsel appeared at the Jefferson County Courthouse for the trial of Atlantic's claim.  Shortly before the

trial was to begin, Atlantic's counsel approached Winbush and again asked if she would be willing to pay Atlantic something to settle its claim.  Winbush, through counsel, again refused because she did not owe the debt.

27.    Atlantic's claim was then called to trial and the Court asked Atlantic's counsel if she had anything to support its claim against Winbush.  At that time, Atlantic's counsel admitted that she had no evidence to offer the Court, and the case was dismissed with judgment in Winbush's favor.

28.    Atlantic knew that Winbush did not owe a debt at the time it filed suit against her, knew that it lacked evidence to secure a judgment against Winbush, knew it would not be able to procure such evidence, had no intent to prove its debt collection suit against Winbush at the time it filed suit against her, and knew that she did not owe the debt in question.

29.    Atlantic and/or its agents performed no meaningful attorney review of its complaints to determine the validity of the claims before it filed its lawsuit against Winbush.

30.    Winbush has been damaged as a result of Atlantic's wrongful acts and omissions described above.  Those damages include, but are not limited to, the cost of an attorney to defend her against Atlantic's fraudulent collection suit, the invasion and interference with Winbush's right to be free from abusive debt collection practices, invasion of Winbush's privacy and solitude, causing Winbush

8

anger, anxiety, fear, embarrassment, and other mental anguish, and various costs and expenses incurred as a result of or in response to Atlantic's wrongful acts, including the time to appear in Court on the day of trial.

31.    At all times pertinent to the allegations of this Complaint, Atlantic acted by and through its duly authorized agents, employers, servants attorneys, or other legal representatives, all of whom acted within the line and scope of such agency, employment, service, or representative capacity.  Alternatively, Atlantic adopted, affirmed, and /or ratified the acts or omissions of its agents, servants, employees, attorneys, or legal representatives as its own with regard to the allegations of this complaint.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. §1692 *ET SEQ*.**

32.    Atlantic used false, deceptive, and misleading representations in an attempt to collect purported debts from Winbush.   Those misrepresentations include, but are not limited to: (1) that Winbush owed a debt to Atlantic or owed a debt in the amount claimed, (2) that Winbush was still legally "responsible" for a debt that had already been paid off, (3) that Atlantic intended to pursue legal action against Winbush, (4) that Atlantic had or could obtain evidence that Winbush owed the debt, and/or (5) that an attorney had meaningfully reviewed the evidence and

9

information regarding Winbush and determined that there was likely to be evidentiary support for the allegations against her.

33.    Atlantic has a pattern and practice of filing such suits, with no intention of proving its claims, based on its knowledge and belief that the majority of people it sues will simply settle its claims, regardless of their merit, or will default.

34.    Atlantic's conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692e.

35.    Atlantic used unfair and/or unconscionable means in an attempt to collect the alleged debt from Winbush.  Atlantic's unfair and/or unconscionable means include, but are not limited to: (1) repeatedly contacting Winbush and demanding that she pay a debt that she did not owe, (2) filing suit against Winbush on a debt she did not owe, (3) filing suit against Winbush on a claim that it knew it had no intent to prove at trial; (4) filing suit against Winbush on claims that it knew it could not prove at trial in the hopes of extracting a settlement from her; and/or (5) filing suit against Winbush without conducting a meaningful attorney review of the basis for that lawsuit and/or whether there was likely to be evidence to support the allegations against her.

36.    Atlantic has a pattern and practice of filing such suits, with no intention of proving its claims, based on its knowledge and belief that the majority

of people it sues will simply settle its claims, regardless of their merit, or will default.

37.   Atlantic's conduct identified above violated the applicable provisions of the FDCPA, including 15 U.S.C. §1692f.

38.   Atlantic's violations detailed above were done intentionally and with knowledge.

39.   As a result of Atlantic's violations of the FDCPA, Winbush has been damaged.  Winbush is entitled to statutory damages, actual damages, and all costs and reasonable attorney's fee pursuant to the relevant provisions of the FDCPA.

## SECOND CAUSE OF ACTION
## INVASION OF PRIVACY

40.   Atlantic's conduct as alleged above, including but not limited to, its sending repeated letters to Winbush threatening legal action when she did not owe a debt, repeatedly calling her and demanding payment on a debt after being informed that the debt had been paid, sending process servers and/or other representatives to trespass onto her residence unannounced looking for her, and improperly filing suit against Winbush without justification, has wrongfully intruded into Winbush's private activities and/or solitude in such a manner as to cause embarrassment, mental suffering, shame, intimidation, and/or humiliation to her and any person of ordinary sensibilities.

41.     Atlantic knew or should have known that it had no basis for filing a collection suit against Winbush.  Atlantic knew or should have known that filing a collection action against Winbush in an attempt to extort settlement when her debt was already paid off was improper.  Accordingly, Atlantic's actions in invading Winbush's solitude were willful, wanton, and malicious.

42.     Winbush has been have been damaged by Atlantic's invasion of her privacy, including, but not limited to, those damages described above.

## THIRD CAUSE OF ACTION
## MALICIOUS PROSECUTION

43.     Atlantic filed its action against Winbush for breach of contract, account stated, and open account without probable cause.

44.     Atlantic filed its claims willfully, wantonly, and out of malice. Atlantic was repeatedly informed and knew that Winbush did not owe the debt claimed, that it was without evidence to support its claims, that it had no intention of procuring such evidence, and that it would not be able to procure such evidence if the cases went to trial.  Instead, it intended to use the threat of legal action to extort payments from Winbush.

45.     Judgment was entered for Winbush and against Atlantic.  Atlantic did not appeal that judgment.

46.     Winbush suffered damages as a result of Atlantic's actions, including, but not limited to, out-of-pocket costs, mental anguish, anger, anxiety, and fear.

## FOURTH CAUSE OF ACTION

## WANTONNESS

47.     Atlantic owes a duty to Winbush to avoid committing wrongful and/or illegal acts that it knows will likely or probably result in injury to her, and/or to fail to act with knowledge that someone is probably imperiled by its inaction.

48.     Atlantic breached that duty by, among other things: (1) initiating collection activity against Winbush with knowledge that she did not owe the debt, (2) filing suit against Winbush with knowledge that she did not owe a debt, (3) filing suit against Winbush without any intent or means to prove its allegations, and/or (4) making false statements about Winbush and/or harassing her into paying a debt that she does not owe.

49.     Atlantic acted knowingly, intentionally, willfully, maliciously, and/or wantonly, in breaching its duties to Winbush.  Atlantic's policy is to initiate collection activities without knowledge to support its claims and to consciously avoid obtaining such knowledge because it would reveal that many of the "accounts" that it had allegedly purchased were not owed.  Atlantic initiated its lawsuits against Winbush pursuant to this policy.

50.     As a proximate result of Atlantic's wantonness, Winbush has suffered injuries and damages.  Winbush's damages include, but are not limited to, the lost time and expense of responding to Atlantic, appearing for trial, and various incidental costs.  Winbush also suffered anxiety, fear, humiliation, emotional distress, and mental anguish as a result of Atlantic's conduct.

51.     Winbush's damages were foreseeable to Atlantic.  Atlantic knew that filing suit against Winbush for a debt she did not owe would likely result in harm, including mental distress and the cost of hiring an attorney, to Winbush.

### FIFTH CAUSE OF ACTION

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

52.     Atlantic has an affirmative duty to Winbush to properly train and supervise its employees, specifically its debt collectors, administrators, and attorneys, with respect to their attempts to collect debts from consumers, including instruction to its employees and agents not to initiate collection efforts when a debt is not owed, not to initiate collection efforts without some evidence of a valid debt, and/or not to pursue frivolous legal claims.

53.     Atlantic knows that its employees and agents behave in a dangerous, fraudulent, and/or otherwise incompetent manner in authorizing and pursuing legal action against Winbush.  Atlantic's employees are on the premises of Defendant

14

Atlantic, performing work for Atlantic, and using the instrumentalities of Defendant Atlantic in furtherance of the breach of duty to Winbush.  Atlantic knows that its employees have frequently hired and/or authorized attorneys to file collection suits on alleged "debts" when Atlantic lacks sufficient evidence to support its allegations and will be unable to procure such evidence.

54.   Atlantic, despite having this knowledge, fails to supervise its employees or agents adequately, and/or failed to take other action to prevent harm to Winbush.

55.   Atlantic's employees were acting within the line and scope of their employment with Atlantic at the time they committed the wrongful acts identified above.

56.   The injuries suffered by Winbush were a reasonably foreseeable consequence of Atlantic's negligent and/or wanton failure to train and supervise, and Winbush was injured as a direct and proximate result of Atlantic's failure to train and supervise its employees.

57.   Defendant Atlantic knows or should know that its employees and agents are not following Atlantic's policies.  Atlantic is aware of that its employees regularly authorize the filing of suit based upon invalid or improper claims.  On information and belief, Atlantic encourages and condones this conduct.  Atlantic is

liable for its wantonness in failing to properly instruct its employees and agents, and/or failing to assure that the policies of Atlantic were being followed.

58.    Winbush has been damaged as a result of Atlantic's wrongful actions and omissions.  Winbush's damages include, but are not limited to, the lost time and expense of responding to Winbush's lawsuit, appearing for trial, and various incidental costs. Winbush also suffered anxiety, fear, humiliation, emotional distress, and mental anguish as a result of Atlantic's conduct.

WHEREFORE, Winbush demands judgment against Atlantic awarding the following relief:

A.    Actual, compensatory and consequential damages, including mental anguish damages, in such an amount as the trier of fact determines;

B.    Statutory damages pursuant to 15 U.S.C. §1692 *et seq.*;

C.    Punitive damages in such amount as the trier of fact determines;

D.    Such interest as allowed by law;

E.    The costs of this suit, including plaintiff's reasonable attorney's fee; and,

F.    Such additional relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Matt Carroll*
One of the Attorneys for Plaintiff,
Nancy Winbush

**OF COUNSEL:**

F. Inge Johnstone
Matt Carroll
JOHNSTONE CARROLL LLC
One Independence Plaza Drive, Suite 520
Homewood, Alabama 35209
Telephone:  205-383-1372

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY STRUCT JURY FOR ALL CLAIMS SO
TRIABLE.

*/s/ Matt Carroll*
One of the Attorneys for Plaintiff,
Nancy Winbush

17